U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

FEB 2 6 2016

CLERK, U.S. DISTRICT COURT
By _____
          Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

CARLOS ARTHUR POWELL,          )
       **Plaintiff,**          )
                 )
vs.          )          No. 1:15-CV-004-P-BL
                 )
GEO CORPORATION, et al.,          )
       **Defendants.**          )          Assigned to U.S. Magistrate Judge

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order 3-251*, this pro se prisoner action has been referred for judicial

screening. Although Plaintiff initially filed a Consent to proceed before a United States Magistrate

Judge, in the time since he filed that document, the bulk of the defendants voluntarily appeared by

the filing of an answer. Defendants have not consented to the resolution of this case by a magistrate

judge under 28 U.S.C. § 636(c). Thus, the undersigned magistrate judge hereby enters this findings,

conclusions, and recommendation under 28 U.S.C. § 636(b)(1)(B). Based on the relevant filings and

applicable law, the motion for summary judgment of all defendants except the Inspector General

should be **GRANTED** and all such claims **DISMISSED**, and Plaintiff's remaining claims against

the Inspector General should be summarily **DISMISSED** with prejudice under 28 U.S.C. §§ 1915A

and 1915(e)(2)(B).

## I. BACKGROUND

In his original complaint in this action, Plaintiff alleges that while housed at the Big Spring

Correctional Center ("BSCC"), he was sexually harassed and fondled by Defendant Officer Sanchez.

(doc.1, at 1.) Plaintiff alleges that while in the dining hall on November 5, 2014 waiting for fellow

inmate Edwin L. Leal-Rax to bring him a tray of food since he is almost blind, he was approached

by Officer Sanchez. (doc. 1, at 6.) Plaintiff contends that without provocation, Defendant Sanchez,

while conducting a pat-down search, rammed his hands up into Plaintiff's groin area hitting him in the testicles and then pinched him on the buttock, leaving a bruise. (doc. 1, at 6-7.) Plaintiff also alleges that when he reported the incident to Warden Jones, the matter was then turned over to an SIS officer, who took his statement and the statement of fellow inmate Leal-Rax. (doc. 1, 6-7.) Plaintiff alleges that a few days later, he and his cell mate Leal-Rax were charged with having a cell phone charger in a hole in the pipeline area beneath a sink in their room, and he was subsequently subjected to a disciplinary charge, hearing, and punishment. (doc.1, 7-9.) Plaintiff alleges that Senior Warden Sims failed to train Officer Sanchez or omitted the proper training regarding sexual harassment and abuse towards prisoners. He alleges that GEO Corporation failed to properly train its staff as to abuse. He alleges that Warden Jones violated his rights to not be subject to reprisal when Jones directed that Plaintiff be interviewed by an SIS officer after Plaintiff reported the matter to Jones, in violation of Inspector General postings about a victim's right to not be subject to retaliation. (doc.1, at 2-3.) As to Defendant Sanchez, Plaintiff alleges that he grabbed and squeezed Plaintiff's testicles and caused him pain and discomfort for several days. (doc.1, 3.) Plaintiff alleges that Officer Berlango investigated the contraband in conjunction with Officer Sanchez. He alleges that Captain Pearson then knowingly and deliberately published false and questionable claims that he was guilty of the code violation of possession of a hazardous tool. (doc. 1, 4.)

While the case was awaiting screening of all claims under 28 U.S.C. §§ 1915A and 1915(e)(2)(B), the bulk of the defendants, that is GEO Group, Inc., Dwight Sims, Jason Jones, William Sanchez, Daniel Berlanga, and Bobby Pearson, filed an answer to Plaintiff's complaint. (doc. 16.) Plaintiff then filed a document entitled "Plaintiff's Response to Defendant's Original Answer and Motion to Clarify and Objection to the Defense." (doc. 16.) After review and

2

consideration of the document, the Court considers the document more as a Reply under Rule 7(a)(7) to the Defendants' answer. The Clerk of Court is directed to note on the docket that this document is considered by the Court as a Rule 7 Reply.

## II. SUMMARY JUDGMENT MOTION

A.    Summary Judgment Evidence

In support of their motion for summary judgment, Defendants provided the Business Records Affidavit of Warden Dwight Sims (doc. 18-1- Exhibit A); nine pages of papers associated with a Prison Rape Elimination Act (PREA) investigation of the incident made the basis of this case (doc. 18-2, pp.1-9, Exhibit B); and twelve pages of papers associated with the disciplinary charge, evidence, and disciplinary hearing officer's report (18-3, pp, 1-12, Exhibit C). Plaintiff did not file any papers or evidence in response to the summary judgment motion. Furthermore, Plaintiff's complaint was not sworn to, and thus it is not competent summary judgment evidence. On January 29, 2015, however, Plaintiff submitted a January 21, 2015 Affidavit of Edwin I. Leal-Rax, and his own January 21, 2015 Affidavit. Although these two affidavits are not pleadings and were not submitted in contest to the summary judgment motion, the Court will consider them. *See generally Barnes v. Johnson,* 204 F. App'x 377, 378 (5th Cir. 2006) (citing *King v. Dogan,* 31 F.3d 344, 346 (5th Cir. 1994) (a plaintiff's verified complaint may serve as competent summary judgment evidence); *see also Hart v. Hairston,* 343 F.3d 762, 765 (5th Cir. 2003) (citing *Huckabay v. Moore,* 142 F.3d 233, 240 n. 6 (5th Cir. 1998); *see generally Nissho-Iwai American Corp. v. Kline,* 845 F.2d 1300, 1306 (5th Cir. 1989) (noting that the statutory exception in 28 U.S.C. § 1746 permits unsworn declarations to substitute for an affidavit if made "under penalty of perjury" and verified as "true and correct").

3

B.      Summary Judgment Standard

When the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is appropriate. Fed. R. Civ. P. 56(a). "[A dispute] is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001)(citation omitted). A fact is "material" if it "might affect the outcome of the suit under governing law."*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To demonstrate that a particular fact cannot be genuinely in dispute, a defendant movant must (a) cite to particular parts of materials in the record (e.g., affidavits, depositions, etc.), or (b) show either that (1) the plaintiff cannot produce admissible evidence to support that particular fact, or (2) if the plaintiff has cited any materials in response, show that those materials do not establish the presence of a genuine dispute as to that fact. Fed. R. Civ. P. 56(c)(1). Although the Court is required to consider only the cited materials, it may consider other materials in the record. *See* Fed. R. Civ. P. 56(c)(3). Nevertheless, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. . . ." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). Instead, parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (other citation omitted)).   In evaluating whether summary judgment is appropriate, the Court "views the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010) (citation omitted)(internal quotation marks omitted).

4

"After the non-movant [here, Plaintiff] has been given the opportunity to raise a genuine factual [dispute], if no reasonable juror could find for the non-movant, summary judgment will be granted." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

C.      Summary Judgment Facts

   *Plaintiff's Facts*

   As noted above, to the extent the Court considers the two affidavits submitted by Plaintiff Powell, they include Powell's allegation that he was sexually assaulted by Sanchez on November 5, 2014, and he subsequently reported the offense and was then interviewed by an SIS officer. (doc. 10.) He also alleges that Sanchez later called him a snitch. Plaintiff contends that Sanchez and Berlango were together outside his cell area when Berlango then entered and found the cell phone charger in a hole under the sink, and then charged both Powell and Leal-Rax with a disciplinary violation. *Id.* Powell believes that because many inmates had access to this area, the cell phone charger was planted "for the purpose of retaliation." *Id.* Edwin I. Leal-Rax alleges in his Affidavit that he observed Sanchez, while conducting a 'pat search' of Powell, slam his hand hard into the groin area of Powell, and caused him to bend over in pain. (doc. 9, at 2.) Leal-Rax alleges he observed Sanchez fondle "Powell's privates before slamming up into Powell's testicles." *Id.* Leal-Rax made a comment to Sanchez, and Leal-Rax alleges Sanchez then pinched Powell's buttock and made a comment that "lawyers screw their clients lets see how he likes bing screwed [sic]." *Id.,* at 2. Leal-Rax alleges he was then the subject of fondling contact by Sanchez. *Id.* Leal-Rax contends that Powell then "vomited and could hardly walk due to the injury from Sanchez." *Id.* Leal-Rax conveyed that he and Powell then prepared the BP-8 grievance form that was submitted to Jones,

which resulted in the interview with an SIS officer.  Leal-Rax also reported that a few days later, while Sanchez and Berlango were together, that Berlango came in and found a cell phone charger in the toilet/sink area, resulting in disciplinary charges against both he and Powell.  Leal-Rax also alleged the cell phone charger was planted in retaliation for the filing of a grievance. (doc. 9, at 3.)

*Defendants' Facts*

On October 25,2014, as indicated in a Prison Rape Elimination Act (PREA) "After Action Review", Powell submitted an informal resolution to the facility warden indicating that on October 16, 2014 Officer Sanchez pat searched him without gloves and was too harsh in conducting the pat search. (doc. 18-2, 1-3, Exhibit B)  In response the facility warden instructed an SIS officer to conduct an investigation of the alleged incident. *Id.,* at 5-6. In the course of the investigation Powell was asked to give a statement. Powell indicated that he felt humiliated by the pat search and by the harshness of Officer Sanchez's conduct and "rude" comments. *Id.,* at 8   As a resolution, Powell requested that the officer wear gloves when conducting pat searches and apologize to Powell. *Id.* The officer also interviewed witnesses of the event. *Id.* At the end of his investigation the officer determined no wrong doing was committed. *Id.,* at 5-6.

On November 8, 2014, a cell phone charger was found in the housing unit Powell lived in and officers determined it belonged to Powell. (Doc. 18-3, at 1-4, 6 Exhibit B.)  Powell was placed in administrative segregation. *Id.*  Powell denied having knowledge of the charger. *Id.*  Following the investigation he was charged with a code 108 resulting in the loss of good conduct time. *Id.*

On January 7, 2015, in response to additional allegations in Powell's complaint filed in this case, a PREA investigation was launched to include re-interviewing Powell, his witnesses Edwin Israel Leal-Rax,  and Officer Sanchez. (doc18-2, at 1-3, Exhibit B.)  During the second interview,

6

Powell revealed the new information contained in his complaint regarding the encounter. *Id.* The additional allegations regarding the conduct of the officer were not revealed during the initial disciplinary hearing officer (DHO) investigation. *Id.,* at 1-2.

In addition to interviews, an OPR referral was submitted for Officer Sanchez. *Id.,* at 2. Inmate Powell was examined by medical staff and no injuries were found. *Id.* Medical staff also reviewed the medical file for Powell, an insulin dependent diabetic who reports to the medical window twice daily for insulin. *Id.* There were no indications in the medical file that Powell made any complaints to medical staff that his genitals were hurt or bruised as a result of the incident. *Id.*

On February 13,2015, the PREA After Action Review was conducted at the Administration building of the facility. The committee found that after the second investigation no changes or revisions were needed to the facility policy regarding PREA and Powell's allegations were unsubstantiated. (doc. 18-2, 2-3.)

D.   Summary Judgment Analysis

(1) Lack of Exhaustion

Defendants argue in their motion for summary judgment that Powell failed to exhaust his administrative remedies prior to filing suit as required under 42 U.S.C. § 1997e(a). That statute provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a)(West 2012). In *Booth v. Churner,* 532 U.S. 731 (2001), the Supreme Court held that Congress intended a prisoner to invoke whatever administrative grievance remedies are available within a jail or prison, without regard to whether the grievance procedure affords money-damage

relief, before he may file suit contesting prison conditions in federal court. *Booth,* 532 U.S. at 738-41. The Supreme Court later clarified that the 1997e(a) exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."*Porter v. Nussle,* 534 U.S. 516, 532 (2002). As the United States Court of Appeals for the Fifth Circuit has explained:

> Quibbles about the nature of a prisoner's complaint, the type of remedy sought, and the sufficiency or breadth of prison grievance procedures were laid to rest in *Booth.* Justice Souter summed up the Court's conclusion in a footnote:
>
>> Here, we hold only that Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.

*Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir. 2001) (citing *Booth,* 532 U.S. at 741 n. 6 ). Then in *Jones v. Bock,* 549 U.S. 199 (2007), although the Supreme Court recognized for the first time that lack of administrative exhaustion was an affirmative defense, the Court expressly reaffirmed that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211, 212-17.

The Supreme Court has also determined that a prisoner cannot bring an action in court regarding prison conditions until the prisoner "properly exhausts" his administrative remedies. *See Woodford v. Ngo,* 548 U.S. 81 (2006). Proper exhaustion under § 1997e(a) means that the inmate must complete whatever administrative review steps are provided in accordance with the applicable procedural rules, without any exception for untimely, unavailable, or procedurally defective attempts at exhaustion. *Id.* at 90-94. It does not include "untimely or otherwise procedurally defective administrative grievances] or appeal[s]." *Id.* at 83-84. This exhaustion requirement gives corrections officials time and opportunity to address complaints internally before allowing initiation of a federal

case, which results in a reduction in the volume of prisoner suits, an improvement in the quality of prisoner suits, and an administrative record that is helpful to the court. *Id.* at 89-90, 93-94. The Fifth Circuit has more recently stated:

> This court has taken a strict approach to the exhaustion requirement. *Dillon v. Rogers,* 596 F.3d 260, 268 (5th Cir. 2010). Proper exhaustion is required, meaning that the inmate must not only pursue all available avenues of relief but must also comply with all administrative deadlines and procedural rules. *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006).

*Lindsey v. Striedel,* 486 F. App'x 449, 452 (5th Cir. 2012) (citing *Woodford,* 548 U.S. at 90-91)). "Where any administrative process remains uncompleted, the requirements of the PRLA are not met, and dismissal is proper." *Nottingham v. Richardson,* 499 F. App'x 368, 373 (5th Cir. 2012)(citations omitted). After the Supreme Court held that exhaustion was an affirmative defense, the Fifth Circuit explained that: "When the defendant raises exhaustion as an affirmative defense, the judge should usually resolve disputes concerning exhaustion prior to allowing the case to proceed to the merits." *Dillon v. Rogers,* 596 F.3d 260, 273 (5th Cir. 2010)..

Defendants note that under the administrative remedies process for BSCC, administrative remedies regarding complaints concerning BSCC policies, procedures, practices and employees are subject to a three stage process. The available records indicate that Powell failed to file a Step 1 grievance or appeal in relation to administrative allegations made in his complaint. Further, Powell did not appeal the decision of the Disciplinary Hearing before filing this lawsuit. In particular, Plaintiff did not allege First, Fifth, or Eighth Amendment violations, nor did he raise any claim of retaliation, in any appeals process afforded to him before filing this suit. As all claims not exhausted in the disciplinary hearing appeals process are barred from consideration in this suit, Plaintiff's claims are barred from review under § 1997(e)a.

9

(2) Plaintiff has Failed to Support Retaliation Claim

Plaintiff claims that the disciplinary hearing and code violations against him were the result of retaliation. To the extent that such a claim can be asserted without Plaintiff first having obtained a reversal of the underlying sanction, in order to state a claim for retaliation, a plaintiff must show: (1) that he invoked a specific constitutional right; (2) that the defendants intended to retaliate against him for the exercise of that right; (3) there was a retaliatory adverse action; (4) the action would not have occurred but for the retaliatory motive. *Armenta v. Pryor,* 377 F. App'x. 413, 416 (5th Cir. 2010) (citing *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1977)). Mere conclusory allegations of retaliation will not suffice, as a plaintiff must produce direct evidence of retaliation, or a chronology of events from which retaliation may plausibly inferred. *Id.,* (citing *Woods· v. Smith,* 60 F .3d 1161, 1166 (5th Cir. 1995)). A district court must "carefully scrutinize claims of retaliation in order to assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them . . . ." *Id* (Internal quotations omitted). The existence of a legitimate prison disciplinary report is "probative and potent summary-judgment evidence" that a disciplinary action was not retaliatory. *Id.*

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Bell v. Wolfish,* 441 U.S. 520, 545-46 (1979)(quoting *Price v. Johnston,* 334 U.S. 266, 285, (1948) (other citations omitted)). In the First Amendment context, a prisoner retains only those rights "that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier,* 417 U.S. 817, 822 (1974); *see also Turner v. Safley,* 482 U.S. 78, 89 (1987). It is generally recognized that security, order, and rehabilitation are legitimate

penological objectives. *E.g., Procunier v. Martinez*, 416 U.S. 396,413-14 (1974).

Powell has not set forth a claim sufficient to meet the elements of the retaliation test. Powell's claim is that he was retaliated against by staff after reporting that he was sexually harassed by an officer. The facility and its staff have a legitimate penological interest in maintaining security and order, and disciplining those inmates who are involved in disruptions of the same. During the DHO investigation, the DHO pointed out the fact that his cell was only a two-man room. (Doc. 18-3, at 1-4, Exhibit C.) This gave some evidence to show that Powell and his cell-mate had knowledge of the existence of the phone charger, a prohibited item for which they both were charged with possessing. *Id.* Further, there is no actual evidence of retaliatory intent on the part of the officers who found the phone charger, the disciplinary hearing officer or the investigating officer. Nor is there evidence that the sanction imposed by the DHO was motivated by retaliatory intent on his part. Nor is there any evidence that the inmate would not have been disciplined for his possession of a prohibited item for lack of any retaliatory intent. It is only reasonable to expect that an inmate who is found to be in possession of a hazardous tool would be subject to some disciplinary sanction for that involvement.

Conclusion

Because the Court has determined that Plaintiff's claims against all Defendants seeking summary judgment are barred for failure to exhaust administrative remedies, and that Plaintiff has failed to support his claim that he was subjected to retaliation, the Court does not address the alternative grounds for summary judgment.

### III. PRELIMINARY SCREENING/REMAINING CLAIM

As noted above, the bulk of the Defendants voluntarily appeared in this case and sought summary judgment. Plaintiff's claims against the remaining defendant, the Inspector General, remain. Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis*. Because he is a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam). Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A.      Inspector General - No Personal Involvement and No Vicarious Liability

With regard to the claims Plaintiff states against Defendant Inspector General, review shows Plaintiff has not stated a claim upon which relief may be granted. In order to be held liable in an action under § 1983 or *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*

(*"Bivens"*)[1] a defendant must be either personally involved in the acts that caused the constitutional violation or must "implement a policy so deficient that the policy itself acts as a deprivation of constitutional rights." *Cronn v. Buffington,* 150 F.3d 538, 544 (5th Cir. 1998). In such cases, a federal official cannot be held vicariously liable for the acts of his subordinates. *Reimer v. Smith,* 663 F.2d 1316, 1323 (5th Cir. 1981). The doctrine of respondeat superior does not apply in *Bivens* personal liability actions. *Cronn,* 150 F.3d at 544. As the Supreme Court recently explained:

> In a § 1983 suit or a *Bivens* action - where masters do not answer for the torts of their servants - the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. In the context of determining whether there is a violation of clear established right to overcome qualified immunity, purpose rather than knowledge is required to impose *Bivens* liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities.

*Aschcroft v. Iqbal,* 556 U.S. 662, 677 (2009). Thus, to successfully state a claim against Defendant Inspector General, Plaintiff must allege either facts demonstrating a level of personal involvement in the events causing his alleged injuries, or facts demonstrating that the Inspector General in some manner implemented an unconstitutional policy that causally resulted in Powell's injuries. *Id.; see also Mouille v. City of Live Oak,* 977 F.2d 924, 929 (5th Cir. 1992).

Plaintiff writes the following:

> Defendant: United States Inspector General, located at 950 Pennsylvania Avenue, N.W., Washington, D.C. 20534, who is employed by the United States of America, acted under the guise of Federal law, and subjected the Plaintiff to harm and retaliation by publishing signs and orders that if anyone is sexually harassed or

---

[1] 403 U.S. 388, 297 (1971). *Bivens,* of course, is the counterpart to 42 U.S.C. § 1983, and extends the protections afforded under § 1983 to parties injured by federal actors. *See Evans v. Ball,* 168 F.3d 856, 863 n. 10 (5th Cir. 1999) ("A *Bivens* action is analogous to an action under § 1983--the only difference being that § 1983 applies to constitutional violations by state, rather than federal officials") (citations omitted), *overruled on other grounds, Castellano v. Fragozo,* 352 F.3d 939, 948-49 & n. 36 (5th Cir. 2003).

> violated that the victim may contact the staff, or the office of the I.G. and do so through the facility phone. The Plaintiff, was never advised that there maybe some consequences, to include, retaliation, transfers, and punishment for disclosure to any staff on another. The fact that Mr. Berlango stated that "we take care of our own", simply verifies the blatant disrespect for the victims and the well being of the wards of the facility.  The Inspector General is sued for nominal (1.00), simply for the enforcement of the law.

(doc. 1, at 4-5.)  A review of this allegation shows that Plaintiff has wholly failed to allege any personal involvement of the Inspector General, or any policy related to the Office of the Inspector General. Even assuming that other persons took actions against Powell based upon his contact with a phone number posted by the Inspector General, that does not support any conduct or action by the Inspector General personally or even by that office.  Plaintiff has failed to allege a claim upon which relief may be granted and his claim against the Inspector General should be dismissed under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii).

## IV. RECOMMENDATION

The motion for summary judgment of Defendants GEO Group, Inc., Dwight Sims, Jason Jones, William Sanchez, Daniel Berlanga, and Bobby Pearson (doc. 18) should be **GRANTED** and Plaintiff Carlos Powell should take nothing on his claims against these Defendants such that the claims should be   **DISMISSED WITH PREJUDICE**. Plaintiff's remaining claims against Defendant Inspector General should be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii).

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law.

Any party may object to this Report and Recommendation. A party  who objects to any part of this Report and Recommendation must file specific written objections within fourteen (14) days

14

after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and identify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  The failure to file specific written objections will bar the aggrieved party from attacking on appeal the factual findings, legal conclusions, and recommendation set forth by the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superceded by statute on other grounds,* 28 U.S.C. § 631(b)(1) (extending the time to file objections from ten to fourteen days), *as recognized in ACS Recovery Servs., Inc. V. Griffin*, 676 F.3d 512, 521 n. 5 (5th Cir. 2012).

SO ORDERED.

February 26, 2016.

_E. SCOTT FROST_
UNITED STATES MAGISTRATE JUDGE